IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

KERRI KATHLEEN DAVIS,

    PLAINTIFF,

VS.                                                    CASE NO.: 12-J-3314-S

CAROLYN V. COLVIN,[1]
Acting Commissioner of Social Security,

    DEFENDANT.

## MEMORANDUM OPINION

This matter is before the court on the record and briefs of the parties. The court has jurisdiction pursuant to 42 U.S.C. § 405. The plaintiff is seeking reversal or remand of a final decision of the Commissioner. All administrative remedies have been exhausted.

At the time of the hearing before the Administrative Law Judge ("ALJ"), the plaintiff was 32 years old, having been born November 7, 1977, and had a limited education (R. 39, 182). Plaintiff alleged an inability to work due to attention deficit hyperactivity disorder (ADHD) and depression (R. 149). The ALJ found that the plaintiff does have impairments which are severe, specifically borderline intellectual functioning with a history of learning disorder and conduct disorder, major depressive

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security and should, therefore, be substituted for Commissioner Michael J. Astrue as Defendant in this action. *See* Fed. R. Civ. P. 25(d).

disorder with anxiety features, post-traumatic stress disorder, chronic, and possible ADHD, none of which met or medically equaled any of the impairments listed in Appendix 1 of Subpart P, 20 CFR Part 404 (R. 20-21). The ALJ therefore concluded that the plaintiff had the residual functional capacity to perform a full range of work at all exertional levels with the following limitations:

> [S]he can learn and remember simple routine work with practice. She can understand and remember simple instructions but not detailed ones. She can carry out simple instructions and sustain attention to simple tasks for extended periods. She would benefit from a flexible schedule and would be expected to miss 1 to 2 days per month due to anxiety and depression. She would benefit from casual supervision and would function best with her own work area apart from others to help minimize anxiety. She could tolerate ordinary work pressures but should avoid excessive workloads, quick decision-making, rapid changes, and multiple demands. She would benefit from regular rest breaks. Contact with the public should be casual; feedback should be supportive; and criticism should be tactful and non-confrontational. [Plaintiff] can adapt to infrequent, well-explained changes with rehearsal. She would need help with long term planning and goal setting but not short term planning and goal setting.

(R. 23). Based on these limitations and the VE's testimony, the ALJ found that the plaintiff could return to her past relevant work as a stocker (R. 25). The ALJ concluded that the plaintiff was not disabled within the meaning of the Social Security Act (*Id.*).

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining: 1) whether there is substantial evidence in the record as a whole to support the findings of the

Commissioner, and 2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401, 91 S. Ct. 1420, 28 L. Ed. 843 (1971); *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). The Court may not decide facts, reweigh evidence, or substitute its judgment for that of the Commissioner. See *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). However, this limited scope does not render affirmance automatic, for

> 'despite [this] deferential standard for review of claims . . . [the] Court must scrutinize [the] record in its entirety to determine reasonableness of the decision reached.' Bridges v. Bowen, 815 F.2d 622 (11th Cir. 1987).

*Lamb*, 847 F.2d at 701. Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 634 (11th Cir. 1984).

The plaintiff argues that the ALJ failed to explain the inconsistency between the VE's testimony and the Dictionary of Occupational Titles ("DOT"), perform an assessment of the effect of Ms. Davis's obesity on her mental ability to work, and properly consider Ms. Davis's credibility. Plaintiff's memorandum at 5-6.

Plaintiff's first claim is that the ALJ failed to comply with Social Security Ruling ("SSR") 00-4p[2] which requires an ALJ to inquire into discrepancies in a VE's testimony

---

[2] "When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The adjudicator will explain in the determination or decision how he or she resolved the conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified." Social Security Ruling ("SSR") 00-4p.

and the DOT. The ALJ, however, did not need the VE's testimony at step four to conclude that plaintiff could perform her past relevant work. *Lamb v. Bowen*, 847 F.2d 698, 704 (11th Cir. 1988) (citing *Schnorr v. Bowen*, 816 F.2d 578 (11th Cir. 1987); *Chester v. Bowen*, 792 F.2d 129 (11th Cir. 1986)). Thus, plaintiff's claims do not undermine the ALJ's finding that plaintiff can perform her past relevant work (a finding which in this case is bolstered by the VE's testimony, even though the testimony was not necessary at step four).

Although the claims could impact the ALJ's findings at step five, any error at step five would be harmless because the ALJ's ultimate conclusion of "not disabled" may be upheld based on his finding at step four. *See, e.g., Ehrisman v. Astrue*, 377 Fed. Appx. 917, 920 (11th Cir. 2010) (because the ALJ found the claimant not disabled at step four of the sequential evaluation, and the ALJ did not err at step four, there is no need to address her claim of error at step five). Plaintiff, therefore, is not entitled to relief.

Plaintiff also contends the ALJ did not properly evaluate her obesity in accordance with SSR 02-1p, 2002 WL 34686281, because the ALJ did not consider the effect of obesity on her mental ability. Pl.'s Br. at 8-12. Plaintiff notes SSR 02-1p indicates obesity "may" cause mental limitations, such as a lack of mental clarity from related sleep apnea or a decrease in social functioning. Pl.'s Br. at 10-11. SSR 02-1p recognizes that obesity can cause further degradation of a claimant's physical impairment and instructs the ALJ to assess the effect of a claimant's obesity on the

claimant's ability to perform exertional, postural, and social functions. *See* SSR 02-1p, 2002 WL 34686281, at *3.

The ALJ considered plaintiff's obesity by specifically discussing the medical evidence related to plaintiff's obesity when formulating the RFC (See R. 20-25). The ALJ stated at step four that he considered "the entire record" (R. 23). The ALJ explicitly stated that he considered the plaintiff's medically determinable impairments in determining whether those impairments could be expected to cause her alleged symptoms (R. 23-24). The Eleventh Circuit has held that a statement by the ALJ that he considered the impairments in combination is sufficient to show that the ALJ considered the combined effect of plaintiff's impairments. *See Jones v. Dep't of Health & Human Svcs.*, 941 F.2d 1529, 1533 (11th Cir. 1991) (noting that the statement that the claimant does not have "an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4" indicated that the ALJ considered the combined effect of appellant's impairments); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1224-25 (11th Cir. 2002) (holding that an ALJ's statement that the claimant "did not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4 ... constitute [d] evidence that [the ALJ] considered the combined effects of [the claimant's] impairments") (emphasis in original).

In any event, substantial evidence supports the ALJ's finding that plaintiff's obesity was not severe. A severe impairment is an impairment that significantly limits a claimant's physical or mental abilities to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c); see also 20 C.F.R. §§ 404.1521(a), 416.921(a) (defining a non-severe impairment). Although plaintiff's doctors diagnosed her with obesity (R. 210, 257, 263, 287), a diagnosis alone is insufficient to establish that the condition caused limitations warranting a finding of a severe impairment. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) ("[T]he mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard"). Even though a physician advised plaintiff to diet and exercise, none of plaintiff's treating physicians opined that plaintiff's obesity affected her ability to work or caused any mental limitations (R. 210, 217-19, 227, 257, 260-63, 287-88, 297-99). Thus, substantial evidence supports that plaintiff's obesity was not severe, and plaintiff failed to prove her obesity caused limitations beyond those in the ALJ's RFC finding.

Plaintiff next argues that the ALJ failed to properly consider her credibility. The ALJ explicitly and adequately articulated his reasons for discrediting plaintiff's subjective testimony (R. 24). *See Marburry v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992). The ALJ's credibility finding, if supported by substantial evidence, will not be disturbed by a reviewing court. *See Dyer*, 395 F.3d at 1210-11.

Plaintiff testified that she was unable to work due to her mental state and ADHD, which made her unable to sleep and resulted in crying spells and panic attacks (R. 50-56). The ALJ found that the evidence did not substantiate that plaintiff suffered from a medical condition that reasonably could be expected to produce her alleged symptoms to the extent alleged (R. 24).

Wolfram Glaser, M.D., examined plaintiff in February 2009 for complaints of ADHD, anxiety, and marital conflict (R. 210). Dr. Glaser declined to provide a letter regarding employment because plaintiff did not meet the criteria of a serious mental illness (R. 309). Plaintiff sought mental health counseling twice in March 2009 with Mimie Player, a licensed counselor (R. 217-19, 256). Plaintiff's speech and motor activity were slowed, her mood was depressed, and her affect was flat (R. 219, 256). Although she reported memory difficulties and hallucinations, her thought processes were coherent (R. 219, 256). Ms. Player diagnosed possible borderline intellectual functioning, ADHD by history, depression, and anxiety (R. 219). Ms. Player stated that she was not qualified to make a determination regarding the level of plaintiff's impairment (R. 311).

In March 2009, plaintiff complained of depression, anxiety, ADHD, trouble sleeping, and trouble concentrating (R. 227). Janice Morgan, M.D., diagnosed depression and anxiety and prescribed Paxil (R. 227). In April 2009, plaintiff complained of "vague depression" and changes in mood, so Dr. Morgan changed her

7

medication (R. 263). At three visits in 2009 for complaints of joint pain and low back pain, Dr. Morgan merely noted plaintiff's history of depression and anxiety and that she was currently on medication (R. 257, 260-61). In June 2010, plaintiff saw Daniel Kyle, M.D., for complaints of anxiety, panic disorders, depression, sleeplessness, delusions, crying, and racing thoughts (R. 297). Dr. Kyle noted plaintiff was depressed, sad, and tearful; diagnosed anxiety, depression, and possible bipolar disorder; and recommended plaintiff see a psychiatrist (R. 298-99). Dr. Kyle later noted he could not provide an opinion on plaintiff's disability status because he only examined her once (R. 310). Thus, based on the record, substantial evidence supports the ALJ's finding that plaintiff's testimony that her mental impairments were completely disabling was not entirely credible.

Without redeciding the facts or reweighing the evidence, this court can find no basis upon which to reverse the decision of the ALJ. *See e.g.*, *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Accordingly, the decision of the Commissioner of the Social Security Administration will be **affirmed** by separate order.

Done, this 7th of May 2013.

INGE PRYTZ JOHNSON
SENIOR U.S. DISTRICT JUDGE